IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LUCAS LOMAS, <br> CARLOS EALGIN, <br>   On behalf of themselves and all <br>   others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HARRIS COUNTY, TEXAS, <br><br> Defendant. | Case No. <br><br> (Class Action) |

**CLASS ACTION COMPLAINT**

Harris County fails to comply with the Fourth Amendment's requirement that anyone arrested without a warrant be released unless a neutral magistrate makes a prompt finding of probable cause supported by an oath or affirmation. In Harris County, probable cause findings for warrantless arrestees are never based on facts supported by oath or affirmation. Because of Harris County's policies and practices, thousands of people every year are kept in jail cells for days, weeks, and months in violation of the Fourth and Fourteenth Amendments and Texas law. Plaintiffs seek declaratory and injunctive relief.

1

## NATURE OF THE ACTION[1]

1. An average of about 1,400 people are arrested without a warrant every week in Harris County. About half of them will still be in jail when their cases are resolved by dismissal, conviction, or acquittal. Many others will spend several days or more in jail until they are able to raise enough money to purchase their release.

2. Harris County is required to release every single one of these detainees unless a neutral magistrate makes a prompt finding of probable cause supported by "oath or affirmation." U.S. Const. amend. IV; *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). In Harris County, all probable cause determinations for warrantless arrestees are based on facts alleged in unsworn statements. The County, as a matter of uniform policy and practice, detains people despite the fact that County officials know that a probable cause finding supported by an oath or affirmation never happens. These post-arrest policies and practices result in the unconstitutional pretrial jailing of thousands of people every month.

3. Plaintiffs, on behalf of themselves and all others similarly situated, seek injunctive and declaratory relief from Harris County's policy and practice of failing to comply with the fundamental constitutional requirement that all warrantless arrestees be released unless a neutral magistrate makes a prompt finding of probable cause supported by oath or affirmation.

## JURISDICTION AND VENUE

4. This is a civil rights action arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

---

[1] Plaintiffs make the allegations in this Complaint based on personal knowledge as to matters in which they had personal involvement and on information and belief as to all other matters.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

6. This Court has supplemental jurisdiction over the state law cause of action asserted in this Complaint pursuant to 28 U.S.C. § 1367 because the state law claim forms part of the same case or controversy as the federal law claim.

## PARTIES

7. Lucas Lomas is 26 years old. He was arrested without a warrant on December 24, 2016, for a felony offense and is currently in jail. He represents himself and a Class of similarly situated people subjected to Defendant's unlawful post-arrest practices.

8. Carlos Ealgin is 27 years old. He was arrested without a warrant on December 26, 2016, for a misdemeanor offense and is currently in jail. He represents himself and a Class of similarly situated people subjected to Defendant's unlawful post-arrest practices.

9. Defendant Harris County is a municipal corporation organized under the laws of the State of Texas. Harris County has a policy and practice of failing to comply with the constitutional requirement to provide warrantless arrestees in its custody a prompt, neutral determination of probable cause supported by oath or affirmation.

## HARRIS COUNTY'S POLICIES AND PRACTICES

10. Approximately 75,000 people are arrested without a warrant in Harris County every year.

11. Harris County itself is responsible for about 25% of all arrests that take place within the County. The City of Houston is responsible for nearly another 50% of arrests. The remaining arrests are made by more than 100 other agencies.

12. Individuals who are arrested by the Harris County Sheriff's Office are typically taken directly to the Harris County jail. Those arrested by other agencies are taken initially to field stations run by other arresting agencies.

3

13. Within hours of each warrantless arrest, the arresting officer calls a hotline staffed around-the-clock by the District Attorney's Office. The arresting officer describes the circumstances leading to arrest, and the Assistant District Attorney on duty decides what, if any, charges are supported by those circumstances. The statements an officer makes to the ADA on duty are not sworn.

14. If the ADA on duty believes that the officer's factual recitation supports a charge, the ADA "accepts" the charges.[2] The ADA tells the arresting officer the financial condition of release required by the schedule employed by Harris County.

15. After the ADA accepts the charges, the police officer types a summary of the facts and a description of the accepted charges into a District Attorney's Intake Management System ("DIMS") terminal. Most police officers in Harris County have access to such a terminal in their squad cars; all officers can access them at stationhouses. The DIMS summary is not sworn.

16. Arrestees who can pay the predetermined sum required for release (and who are not otherwise ineligible for release) are released after basic processing at the arresting agency's stationhouse. In these cases, a probable cause determination will be made, if at all, at a subsequent court appearance. Arrestees who cannot afford to pay the financial condition required for their release, or who are ineligible for release, are transferred to the Harris County Jail for booking.[3]

---

[2] At some point after charges are accepted, a criminal Complaint containing a boilerplate, bare bones recitation of the charges is generated. The Complaint simply recites that officials believe a particular crime to have been committed but does not contain a description of the facts leading to arrest. Therefore, it could not constitutionally serve as the basis for a finding of probable cause by a judicial officer that the elements of a crime have been met. And, in practice, it does not serve as the basis for Hearing Officers' findings of probable cause because Hearing Officers base probable cause determinations on the purported facts contained in the unsworn DIMS summary.

[3] If the Harris County Sheriff's Office made the arrest, no transfer is necessary before the booking process begins because Sheriff's Office arrestees are typically taken directly to the jail upon arrest.

17. As a matter of policy and practice, individuals arrested without a warrant within Harris County routinely do not receive probable cause determinations until they are transferred from the custody of the arresting authority to Harris County custody.

18. Harris County accepts into its custody all warrantless arrestees who are arrested by other agencies and who fail to pay the monetary sum required for their release pursuant to the County's predetermined bail schedule.

19. Many warrantless arrestees who are arrested by agencies other than Harris County are held for two or three days, or more, before being transferred to the Harris County Jail.

20. In July and August 2016, for example, many individuals arrested by the City of Houston without a warrant were kept in the Houston Jail longer than 48 hours without a neutral determination of probable cause. Booking records for 2016 show that, in these two months alone, Houston held hundreds of inmates in its jail for longer than three days before transferring them to Harris County. For example, one person arrested on July 25 did not receive a probable cause determination until July 31 (more than 144 hours after arrest); another person, arrested on July 23, did not receive a probable cause determination until July 30 (more than 168 hours after arrest); and at least 35 other people in the months of July and August waited more than four days (96 hours) between arrest and a probable cause determination.

21. As a matter of policy and practice, Harris County accepts into its custody, and keeps in its custody, warrantless arrestees transferred to the jail from other arresting agencies or arrested by the Sheriff's Department, without regard for how much time has passed since the individual was arrested and even though Harris County knows that no probable cause determination has been made.

22.     As a matter of policy and practice, Harris County continues to detain warrantless arrestees—whether arrested by Harris County itself or another agency—for whom there has been no probable cause determination within a reasonable period of time, which is 48 hours at the longest.

23.     Warrantless arrestees in Harris County custody appear from the jail by videolink before a magistrate, known as a Harris County Hearing Officer, who presides over the hearings from a courtroom in the Harris County courthouse.

24.     These hearings are referred to locally as "magistrations," "Article 15.17 hearings," or "probable cause hearings."

25.     At any point during the jail's booking process, before or after the probable cause hearing, an arrestee can pay a predetermined money bail and be released. The Harris County Sheriff's Department, through its jail personnel, assembles groups of roughly 20 to 45 arrestees throughout the day, every day, for purposes of attending these hearings by videolink.

26.     The County's employees and agents know the time and date of arrest for every warrantless arrestee, regardless of the arresting authority.  Such information is recorded and stored in computer systems readily available to them.  County employees and agents know how long a warrantless arrestee has been in custody.

27.     Like all arresting agencies within the County, the Harris County Sheriff's Department, when it makes arrests, uses the DA's hotline and the DIMS system. The County and its employees and agents know that the statements that ADAs present to Hearing Officers are not sworn.  The County and its employees, officers, and agents also have access to jail and court records, which do not contain a sworn statement of the factual basis for probable cause findings.

28. The County and its employees and agents know that, in almost every case, no probable cause determination is made by a neutral magistrate prior to the video hearings for which the Sheriff's Department assembles groups of arrestees.

29. At the hearings, the Hearing Officer calls an individual's name and reads the charge. That individual gets up and stands in the middle of a red square on the floor of the room in the jail. An assistant district attorney, who is in the courtroom with the Hearing Officer, reads from the DIMS report and represents that the statement of facts in the report are the facts that led to the arrest.

30. Harris County does not provide defense attorneys at this hearing.

31. County employees and agents, including Sheriff's deputies and employees of Pretrial Services, are present throughout the hearings. They know that the information the ADA reads is from the DIMS system. They know that no oaths are sworn (nor affirmations made) at the hearings.

32. The statements the ADA reads, and on the basis of which Hearing Officers find probable cause in almost every case, are not supported by oath or affirmation. In other words, they are not signed under penalty of perjury. They are not sworn.

33. On the basis of the unsworn factual statements read by the ADA, the Hearing Officer decides whether there was probable cause for arrest. Hearing Officers find probable cause in almost every case.

34. Every year, Harris County permits unsworn statements to provide the basis for findings of probable cause for further detention in tens of thousands of cases involving warrantless arrestees.

35. Sometimes a Hearing Officer concludes that there is not enough information to determine whether probable cause existed for the arrest. In these cases, the Hearing Officer tells the Sheriff's Department to continue detaining the person, and urges the ADA to contact the arresting officer to find out more about the circumstances leading to the arrest.

36. As a matter of policy and practice, the Sheriff's Department continues to detain warrantless arrestees in these circumstances while the ADA investigates further. For each of these warrantless arrestees, the Sheriff's Department knows that there has been no finding of probable cause to support continued detention. The Sheriff's Department also knows that the sole purpose of further detention is to allow the ADA time to investigate. If, during this process, an arrestee can pay the predetermined scheduled bail and is otherwise eligible for release, he will be released.

37. As a matter of policy and practice, the Sheriff's Department brings arrestees who are not released to a subsequent probable cause hearing docket. At the subsequent docket, when the arrestee's name is called, the ADA reports the results of her investigation to the Hearing Officer, again using unsworn statements, and the Hearing Officer decides whether probable cause existed for the arrest.

38. The process of setting bail and finding probable cause is a rote exercise; the hearings usually last approximately one minute.

39. If a Hearing Officer makes a finding of probable cause, Harris County will continue the pretrial detention of the warrantless arrestee despite the fact that Harris County officials know that the finding was not supported by sworn statements.

40. The vast majority of warrantless arrestees are held incommunicado from the moment they are taken into Harris County custody until sometime after their magistration hearing.

41. Following every arrest, an arrestee's case information and related documents become publicly available on the District Court Clerk's website. Once the arrestee is in Harris County custody, the arrestee's online case records will indicate that fact. The arrestee's specific location will be shown as the "inmate processing center" at 1201 Commerce Street.

42. While the individual is in processing, she is completely unavailable for an attorney (or other) visit and cannot be contacted.[4] Jail officials state that individuals who are in processing are actually located in the basement of one of four jail buildings, and the only way to find a specific person is for a guard to walk through the cell blocks and call the person's name.

43. However, jail officials also state that, if a person who is in processing is able to pay the scheduled money bail, she will be found and released. Thus, during this period of time, poor arrestees are held without any ability to contact the outside world, but an individual who has money can purchase her release from jail.

44. Any arrestee who was not assigned to a housing unit before her probable cause hearing will remain inaccessible to attorneys and everyone else outside the jail after the hearing until the jail assigns the individual to a housing unit.

45. It is only after being assigned to a housing unit that an arrestee can be contacted by anyone outside the jail and will be scheduled for a hearing in a County Court at Law.

46. A sheriff's deputy at 1201 Commerce Street was asked to produce for attorney visits several individuals who had attended their probable cause hearings within the previous 24 hours. After looking for the men for an hour, the deputy stated that the men could not be seen, even by an attorney, until after they had been assigned to a housing unit in the jail, which had not

---

[4] The Sheriff's own website states that inmates are not available for visits while they are in the processing center. *See* http://www.harriscountyso.org/JailInfo/inmate_info_inmate_faqs.aspx

yet happened. He said that the individuals were all in the basements of one of four buildings, but he did not know which one. The deputy provided a list of the four facilities in which the arrestees might be located (1200 Baker Street Jail; 701 North San Jacinto; 711 North San Jacinto Street; 1307 Baker Street).

47. Shortly after that conversation, a sheriff's deputy at the jail building at 1200 Baker Street confirmed that the same men could not be contacted until after they had been assigned to a housing unit.

48. The deputies stated that it would take 24 to 36 hours for that to happen, during which time no one would be able to reach these men, including any attorney. The sheriff's deputy said that they could not be found for the purpose of an attorney visit, but they would be found and released if money bond was posted.

49. As a matter of policy and practice, warrantless arrestees are released from pretrial detention only when they either pay their bail amounts or resolve their cases.

### **Lucas Lomas**

50. Lucas Lomas is 26 years old. He was arrested without a warrant on December 24, 2016, for theft, a felony offense.

51. On December 25, 2016, a Hearing Officer found probable cause in his case and imposed a secured financial condition of release of $15,000. The Hearing Officer's finding of probable cause was made on the basis of unsworn statements.

52. Mr. Lomas is currently in jail. He cannot afford to pay the secured financial condition of release. If he could pay the amount required, he would be released.

53. Mr. Lomas is scheduled to see a Criminal Court at Law Judge for the first time on January 3, 2017.

**Carlos Ealgin**

54. Carlos Ealgin is 27 years old. He was arrested without a warrant on December 26, 2016, for possession of marijuana under two ounces, which is a misdemeanor offense.

55. Later on December 26, 2016, a Hearing Officer found probable cause in his case and imposed a secured financial condition of release of $15,000. The Hearing Officer's finding of probable cause was made on the basis of unsworn statements.

56. Mr. Ealgin is currently in jail. He cannot afford to pay the secured financial condition required for his release. If he could pay the amount required, he would be released.

57. Mr. Ealgin is scheduled to see a County Criminal Court at Law Judge for the first time on January 3, 2017.

**Class Action Allegations**

58. The named Plaintiffs bring this action, on behalf of themselves and all others similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common basis.

59. A class action is a superior means, and the only practicable means, by which the named Plaintiffs and unknown Class members can challenge the Defendant's unlawful policy and practice of failing to provide warrantless arrestees with prompt determinations of probable cause supported by an oath or affirmation.

60. This action is brought and may properly be maintained as a class action pursuant to Rule 23(a)(1)–(4) and Rule 23(b)(2), of the Federal Rules of Civil Procedure.

61. This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

62. The Plaintiffs propose the following Class and subclass:

    a. A Class seeking injunctive and declaratory relief: All warrantless arrestees who are currently detained, or will be detained, by Harris County and who have not been provided, or will not be provided, a prompt, neutral determination of probable cause supported by oath or affirmation.

        i. A Subclass seeking injunctive and declaratory relief: All warrantless misdemeanor arrestees who are currently detained, or will be detained, by Harris County and who have not been provided, or will not be provided, a neutral determination of probable cause supported by oath or affirmation within 24 hours of arrest.[5]

### Numerosity.  Fed. R. Civ. P. 23(a)(1)

63. The individuals in the class are so numerous that joinder of all members would be impracticable.

64. About 75,000 people are arrested without a warrant in Harris County every year. Only 22% of those people are released on bond prior to booking into the Harris County jail, according to publicly available data. The rest are detained by Harris County. 48.2% of those detainees remain in Harris County custody through the disposition of their cases (or for at least one month of pretrial detention, if their cases are not resolved and they are not released within one month) because they are unable to post a bond.[6] None was provided a prompt determination of probable cause supported by oath or affirmation. The number of current and future arrestees subject to this policy will be well into the tens of thousands. The Class easily satisfies the numerosity requirement.

---

[5] Absent extraordinary circumstances not present in this case, detention after a warrantless arrest without a neutral determination of probable cause is presumptively unreasonable beyond 48 hours. *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 45 (1991). Moreover, the facts and circumstances of a particular jurisdiction can render periods of less than 48 hours unreasonable.  Plaintiffs propose this initial subclass because Texas law and the Harris County Local Rules of Court require warrantless misdemeanor arrestees to be given a probable cause determination after 24 hours or to be released from custody.  Thus, at least in Harris County, detention beyond 24 hours for those arrested for misdemeanor offenses without a warrant is presumptively unreasonable because the local and state governments have already determined that there is no legal or factual need for any further delay.

[6] Pretrial detainees who post bond after one month of pretrial detention are not recorded in publicly available statistics.

65.     Because the joinder of thousands of cases is impracticable, this case satisfies the numerosity requirement.

### Commonality.  Fed. R. Civ. P. 23(a)(2).

66.     The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the Class.  The named Plaintiffs seek relief concerning whether the Defendants' policies, practices, and procedures violate the rights of the Class members and relief mandating that the Defendant change its policies, practices, and procedures so that the constitutional rights of the Class members will be protected in the future.

67.     Common legal and factual questions arise from one central scheme: the County's policy of refusing to release warrantless arrestees even when there has not been a prompt probable cause determination by a neutral magistrate supported by an oath or affirmation.  The County has operated this policy in materially the same manner every day.  The resolution of these legal and factual issues will determine whether all of the members of each Class are entitled to the relief that they seek.

Among the most important, but not the only, common questions of law and fact are:

a.  Whether it violates the United States Constitution to detain warrantless arrestees for unreasonable periods of time without a neutral finding of probable cause on the basis of statements supported by oath or affirmation;

b.  Whether it violates Texas state law to detain misdemeanor arrestees for more than 24 hours without a neutral determination of probable cause supported by oath or affirmation;

c.  Whether the County maintains a policy of detaining warrantless arrestees without a prompt finding of probable cause that is supported by oath or affirmation.

### Typicality.  Fed. R. Civ. P. 23(a)(3).

68.     The named Plaintiffs' claims are typical of the claims of the other Class Members, and the named Plaintiffs have the same interests in this case as all other Class Members.  Each

13

Named Plaintiff was arrested without a warrant and is currently being detained beyond a reasonable period of time (48 hours at the longest) without a constitutionally adequate probable cause hearing.

69. The answer to whether the County maintains an unlawful policy of detaining warrantless arrestees for an unreasonable period, including for longer than 48 hours, in the absence of a judicial determination of probable cause supported by oath or affirmation will determine the claims of the named Plaintiffs and every other Class Member.

70. If the named Plaintiffs succeed in their claims that the County's policies and practices concerning warrantless arrestees violate their rights, that ruling will likewise benefit every other member of the Class.

### Adequacy. Fed. R. Civ. P. 23(a)(4).

71. The named Plaintiffs are adequate representatives of the Class because their interest in the vindication of the legal claims that they raise is entirely aligned with the interests of the other Class Members, each of whom has the same basic constitutional and state-law claims. The named Plaintiffs are members of the Class, and there are no known conflicts of interest among the members of the Class, all of whom have a similar interest in vindicating their constitutional rights in the face of Defendant's policy.

72. Plaintiffs are represented by Civil Rights Corps and the Texas Fair Defense Project, whose attorneys have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendant's scheme and the relevant constitutional and statutory law. Counsel from Civil Rights Corps has been lead counsel in well over a dozen major federal class actions challenging the constitutionality of post-arrest systems in Alabama, Georgia, Illinois, Louisiana, Mississippi, Missouri, Tennessee, Texas, and other states.

73. Class counsel have conducted an investigation into Harris County's policy of detaining warrantless arrestees without a prompt, neutral determination of probable cause supported by oath or affirmation. This investigation has included interviews with witnesses, municipal officials and employees, inmates, prosecutors and defense attorneys practicing in local courts, community members, and national experts in constitutional law, post-arrest procedure, law enforcement, judicial procedures, criminal law, pretrial services, and jails.

74. Class counsel have a detailed understanding of state law and practices as they relate to federal constitutional requirements. Counsel have studied the way that these systems function in other cities and counties in order to investigate the wide array of lawful options available to municipalities that seek to comply with the Constitution.

75. As a result, counsel have devoted significant time and resources to becoming intimately familiar with the County's scheme and with the relevant state and federal laws and procedures that can and should govern it. The interests of the Class Members will be fairly and adequately protected by the Plaintiffs and their attorneys.

### Rule 23(b)(2)

76. Class certification is appropriate because the Defendants, through the policies, practices, and procedures that make up its post-arrest process for warrantless arrestees, have acted in the same unconstitutional manner with respect to all Class Members. The Defendant has a policy and practice of detaining people beyond a reasonable period of time (48 hours at the longest) even though Defendant knows that there has been no probable cause finding supported by an oath or affirmation, as is necessary in order to continue detention after a warrantless arrest.

77. The Class therefore seeks declaratory and injunctive relief that will prevent the Defendants from detaining arrestees beyond a reasonable period of time — but in any event no

longer than 48 hours — without a neutral determination of probable cause supported by oath or affirmation. Because the putative Class challenges the County's practices as unconstitutional through declaratory and injunctive relief that would apply to every Class Member, Rule 23(b)(2) class certification is appropriate and necessary.

78. Injunctive relief compelling the County to comply with this constitutional right will similarly protect each member of the Class from being subjected to the County's unlawful policies and practices. A declaration and injunction stating that the County must provide a neutral finding of probable cause supported by oath or affirmation and that the County cannot detain someone beyond a reasonable period of time (48 hours at the longest) without a finding of probable cause supported by oath or affirmation would provide relief to every member of the Class. Therefore, declaratory and injunctive relief with respect to the Rule 23(b)(2) Class as a whole is appropriate.

## Claims for Relief

### *Count One*: Fourth and Fourteenth Amendments

79. Plaintiffs incorporate by reference the allegations in paragraphs 1-79.

80. After a warrantless arrest, the Fourth Amendment requires a prompt, neutral determination of probable cause "supported by oath or affirmation." U.S. Const. amend. IV; *Cty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991); *Gerstein v. Pugh*, 420 U.S. 103 (1975). This constitutional provision is presumptively violated after 48 hours absent extraordinary circumstances, which are not present here. Defendant Harris County violates Plaintiffs' rights by continuing to keep them in custody after a warrantless arrest without providing a prompt, neutral determination of probable cause supported by an oath or affirmation.

### *Count Two*: Defendant Falsely Imprisons Plaintiffs in Violation of Texas law

81. Plaintiffs incorporate by reference the allegations in paragraphs 1–81.

16

82. Texas law requires that all misdemeanor arrestees be brought before a magistrate within 24 hours or be released on an affordable bond, and requires that all felony arrestees be brought before a magistrate within 48 hours or be released on an affordable bond. Tex. Code Crim. P. Ann. § 17.033(a)–(b). If the arrestee cannot afford any bond, she must be released on a personal bond immediately. *Id.* Therefore, any person in Harris County custody after a warrantless arrest for 24 hours on a misdemeanor charge or 48 hours on a felony charge who was otherwise eligible for release but unable to secure release and who was not offered a personal bond is unlawfully detained. Harris County, therefore, falsely imprisons Plaintiffs and Class Members who are detained beyond these time periods.

## REQUESTS FOR RELIEF

WHEREFORE, the named Plaintiffs, on behalf of themselves and a class of others similarly situated, request that this Court issue the following relief:

a. A declaration that Harris County violates Plaintiffs' rights by detaining them after a warrantless arrest without a neutral and prompt determination of probable cause based on facts sworn by oath or affirmation.
b. An injunction requiring Harris County to ensure that all warrantless arrestees in its custody receive a prompt determination of probable cause by a neutral magistrate based on facts supported by oath or affirmation consistent with Texas and federal law.
c. An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 18 U.S.C. § 1964, and any other relief this Court deems just and proper.

Dated:  December 28, 2016

Respectfully submitted,

*/s/ Rebecca Bernhardt*

Rebecca Bernhardt (TX Bar No. 24001729)
*Attorney-in-Charge*
Susanne Pringle (TX Bar No. 24083686)
Texas Fair Defense Project
314 E Highland Mall Blvd, Suite 108
Austin, Texas 78752
(512) 637-5220
rbernhardt@fairdefense.org
springle@fairdefense.org

*/s/ Elizabeth Rossi*

Elizabeth Rossi (*Pro hac vice* pending)
Charlie Gerstein (*Pro hac vice* pending)
Alec Karakatsanis (*Pro hac vice* pending)
Civil Rights Corps
910 17th Street NW, Fifth Floor
Washington, DC 20001
(202) 681-2409
elizabeth@civilrightscorps.org
charlie@civilrightscorps.org
alec@civilrightscorps.org