UNIVERSITY of
# HOUSTON

**Law Center**

**Sandra Guerra Thompson**
*Newell H. Blakely Chair
and Criminal Justice Institute Director*

December 23, 2020

Hon. Lee Rosenthal
U.S. District Judge
United States District Courts
515 Rusk St.
Houston, Texas 77002

Re: LUCAS LOMAS and CARLOS EALGIN v. HARRIS COUNTY, TEXAS

Dear Judge Rosenthal:

    On November 1, 2017, you issued a final judgment in the case of *Lomas v. Harris County*. In that opinion, you ruled that an independent monitor would ensure that the Harris County District Attorney's Office had modified its District Attorney Intake Management System (DIMS) so that a law enforcement officer would swear to the facts being entered into the DIMS, in order that sworn facts would be presented to judicial officers for determination of probable cause. You also ruled that an independent monitor would be appointed for a period of three years from the entry of the final judgment. Thus, the three-year period would expire on October 31, 2020. You thereafter appointed me to serve as the independent monitor.

<u>Biannual Inspections from 2018-2020</u>

    I started work on February 1, 2018. Since then, I have reviewed a representative sample of DIMS summaries at the Harris County District Attorney's Office (HCDAO) twice per year, in February and July of each year, with the last inspection being done remotely due to COVID. On each occasion, I found that the DIMS system required officers to swear to the facts in the probable cause statements, consistent with the Consent Decree. I sent letters to the parties with my findings shortly after each inspection.

    Upon request by the Plaintiffs, in February of this year, I also investigated: (1) whether the oath language in the computer system adequately authenticated an officer's identity so as to permit prosecution for false statements; and (2) whether the training provided to police officers sufficiently explained that they are subject to prosecution for a false statements. Based on my investigation, I found both the training program and the authentication process to be appropriate. Upon my request, the HCDAO added the "/s/" prior to the officer's name in the signature line to comply with Texas law on electronic signatures. The letters I sent to the parties following each inspection are attached as Appendix A.

On October 16, 2020, I met with Assistant District Attorneys Scott Durfee and Jim Leitner. Mr. Durfee memorialized this conversation in a letter dated October 25th (attached as Appendix B). In his letter, Mr. Durfee states that "the Houston Police Department were routinely reviewing the probable cause summaries submitted by their officers in DIMS and making changes to the sworn summaries without documenting the fact of the change or swearing to the amended probable cause summary." According to Mr. Durfee's letter, the supervisors considered the changes to be non-substantive changes, and they viewed their actions as "quality control" measures. Mr. Durfee and Mr. Leitner instructed the HPD command staff to "cease this practice, and they immediately agreed to do so."

The HCDAO also sent a general disclosure of the circumstances to the Harris County Criminal Lawyers Association and the Harris County Public Defender's Office. The HCDAO's Conviction Integrity Division Chief Gerald Doyle also began work with the HCDAO's Information Technology Director Gary Zallar to determine whether DIMS has the capability to specifically identify criminal cases in which ha DIMS probable cause summary was amended.

I held a videoconference with the parties on November 12th. Following this meeting, I had asked the HCDAO to investigate three questions:

1. Does HPD's TIBERON software allow them to determine which DIMS summaries had been altered and how they were altered?
2. Is there a means for securing the system to make it impossible for a supervisor to make alterations to an officer's sworn statements?
3. Can HCDAO provide the monitor with a copy of the written policy by HPD prohibiting alterations to the DIMS summaries?

Mr. Gerstein, for the Plaintiffs, had also requested that the HCDAO produce the DIMS summaries for the period 2019-2020, so that they might conduct further investigation. He stated that the monitor has the authority to require production of these statements under the Consent Decree. Thus, I also asked the HCDAO to investigate how they might make these probable cause summaries available should this production be necessary.

Mr. Durfee responded by email on November 24th and then by letter dated December 4th. (Copies of the email and letter are attached as Appendices C and D, respectively.) In the email of November 24th, Mr. Durfee provided a copy of an email sent to command staff with the policy change regarding making changes to probable cause statements. His email also provided a copy of an email from HPD Chief Skillern who made three points. First, he said that they (HPD) were not sure whether they would be able to identify the documents that were altered. Second, he also stated that they are taking steps to retain copies of original documents as well as any subsequently changed documents. Third, he said that they were planning to limit access to any future transaction numbers to the originating officer and supervisors in the Joint Processing Center. Mr. Durfee's email also notified me of another issue they had discovered: "DIMS has the technical ability to allow a third party to log into DIMS on the third party's account and change a DIMS summary without the affiant's name being changed." Fortunately, he also states, "To be clear, any such change would be documented and logged with the third party's user information."

I held a meeting with the parties on December 15. At this meeting, I reminded the parties of the terms of the consent decree and my responsibilities as monitor to conduct inspections

biannually, which I have done for the three-year period, ending October 31, 2020. I also reminded the group about the current circumstances that we have been investigating since October 16th. I informed the parties that we seem to be at an impasse on how to proceed, and that I felt it would be appropriate to report to you about the state of affairs.

As I see it, there are several issues that should be decided. As a foundational matter, there is a question about the scope of the monitor's authority. Viewed narrowly, the question would be whether the HCDAO has implemented and maintained a DIMS system that requires officers to check a box indicating that the probable cause summaries are sworn. Under this view of the case, I have conducted inspections and found that the Defendant has complied with the terms of the Consent Decree. Viewed broadly, on the other hand, the issue would now be whether the fact that Houston Police Department supervisors have had the capability to alter, and have in fact altered, the probable cause summaries in the DIMS without swearing to the changes so undermines the system agreed to under the Consent Decree as to raise a question of compliance with the agreement.

If you find that the recently-discovered circumstances fall within the purview of this monitorship, then there are additional matters to decide. As an initial matter, Plaintiff's counsel have requested the production of the relevant probable cause summaries which would have been read into the record at judicial hearings. At the most recent meeting, I determined that the relevant time period would be that covered by the monitorship (February 1, 2018 to October 31, 2020). At the video conference of December 15th, I asked representatives of the HCDAO to make plans for the production of these documents on a hard drive that I might keep in my possession while you have time to consider arguments about the appropriateness of providing these to the Plaintiffs. After further discussion, Plaintiffs' counsel would like to see the probable cause statements in order to safeguard the information for possible use in litigating this matter further. They also suggested that their review of the statements might reveal certain patterns. Upon my request, the HCDAO agreed to develop a plan for this production should it be required.

Second, on December 15th, in an email immediately following the videoconference with the parties, I asked Mr. Durfee to provide a response to an issue he had raised in his initial letter of October 25th. In that letter, he stated that "Conviction Integrity Division Chief Gerald Doyle will also work with our Information Technology Director Gary Zallar to determine whether DIMS has the capability to specifically identify criminal cases in which a DIMS probable cause summary was amended [by a supervisor]."

By email on December 16th, Mr. Durfee sent me the following response (included verbatim):

> The District Attorney has asked JoAnne Musick and Gary Zallar to conduct a search for cases in which the DIMS probable cause summary was amended in DIMS. To be clear, however, this will not address changes to the DIMS probable cause summary that were made in TIBURON *prior to* submission to DIMS.

**Example 1:**    HPD patrol officer prepares a DIMS probable cause statement using the HPD TIBURON system. *Before the document is actually sent* to the Harris County DIMS system, an HPD supervisor reviews the patrol officer's proposed DIMS report and amends the probable cause statement. The probable cause statement is then sent to the Harris County DIMS system.

In this scenario, there is only one DIMS probable cause statement in the Harris County system, even though there may have been an alteration of what the patrol officer originally drafted. As such, a review of the Harris County DIMS

system would not be able to capture that change.  It could only be found in TIBURON, if at all.

**Example 2:**   HPD officer prepares a DIMS probable cause statement using the Tiburon system.  HPD sends that DIMS report/entry to the Harris County DIMS system.  An error, omission, clarification is necessary and the DAO "unsends" the DIMS submission in its entirety.  Then either the original HPD officer, or any other person with access to that portion of the DIMS within Tiburon, makes a change and resubmits the DIMS submission. In this case, the Harris County DIMS system would capture that change.

**Example 3:**   Harris County patrol officer prepares a DIMS probable cause statement and submits it to the Harris County DIMS system.  A third party asks Intake to "unsend" the DIMS submission in its entirety, then logs into the system, amends the previous DIMS probable cause summary, and then "resends" the DIMS submission with the amended probable cause summary.

In this scenario, the Harris County DIMS system captures and preserves: (1) the original DIMS submission, including the identity of the original sender (by the sender's login code); and (2) the amended DIMS submission, including the sender of that amended submission (by that sender's login code).

Accordingly, in the Harris County DIMS system, we can:

(a) Narrow the search to all cases in which there were multiple DIMS submissions; and

(b) Further narrow the result of that search to cases with multiple DIMS submissions in which the DIMS probable cause summary was amended (thus screening out amendments to the unsworn portions of the overall DIMS submission).

The net result will be a list of cases in which the original DIMS probable cause summary was amended by a third party within the DIMS system.  Based on this list, we would then make a specific disclosure to the affected defendants and their counsel, if any, and those defendants would be able to act on that information as they see fit.

We would also send you that list as well for you or the Court to use as you see fit.

**** 

Thus, there are tasks that are still pending to be completed that should be seen to completion:

1. Per Mr. Durfee's above email of December 16th, the monitor and the plaintiffs should receive and review the list of cases with multiple DIMS submissions in which alterations to probable cause summaries were made, either by HPD supervisors or by any other third party.  The monitor and the parties should be provided with copies of the original probable cause summaries and the altered summaries for comparison.

2. Determine whether HPD's TIBURON operating system has the capability to determine which probable cause statements were altered.

3. Determine whether HPD changed its operating system to retain saved copies of the original probable cause summaries as well as any subsequent altered summaries.

4. Determine whether HPD has limited access to any future transaction numbers to the originating officer and supervisors at the Joint Processing Center (as Chief Skillern stated it was their intention to do). (Query whether supervisors in the JPC should have this access at all or whether, if they do, whether they should not be allowed the capability to alter the probable cause summaries?)

5. Determine whether the HCDAO eliminated the ability of a third party to make changes to a probable cause summary in DIMS.

Finally, as I explained to the parties at the December 15th meeting, to conduct a proper investigation into this matter, a monitor would need the assistance of a computer security expert who would require a substantial amount of time, probably several weeks for assessment and several more weeks or months for remediation, depending on the findings of the assessment. The HCDAO has stated that the alterations to the probable cause summaries were possible due to HPD's use of a TIBURON operating system that interfaces with DIMS. They have also represented that no other law enforcement agency has this capability because none of them uses TIBURON. The following are some of the questions that would need to be addressed by an independent computer security expert:

1. Why was TIBURON set up to give supervisors the capability to alter an officer's sworn probable cause statement? Should the DIMS have been configured to prevent amendments to probable cause summaries by anyone other than the affiant police officer? I am not clear on the interface of the two systems. One challenge in addressing this issue is that TIBURON is operated by an agency of the City of Houston, and DIMS is operated by an agency of Harris County, so the monitor would need the authority to require cooperation from an agency of the City of Houston, which is not a party.

2. Have HPD and HCDAO complied with computer security protocols? What are the compliance standards? Have audits been performed recently? If so, what were the results of the audits? If standards are required but not adhered to, what compensating controls are in place? If no compensating controls are followed, why not?

3. For HPD Information Technology, regarding TIBURON:
   a. Who runs TIBURON for HPD? If the system goes down, who is responsible for it?
   b. To investigate past changes, we would need to find out about backups. Are the backups incremental or complete? How far back do they go? Who has access to the backups? Has anyone ever tried testing a restore? Is there use of encryption?
   c. How is access control managed? Regarding Role-Based Access Control, who has which roles, and how are those privileges assigned?
   d. What is the password policy? How does HPD monitor workplace password compliance?
   e. How is audit logging configured? What about operational logs?

4. For TIBERON customer service representatives, regarding taking adequate steps to prevent future alterations:
   a. What options are there for Role-Based Access Controls?
   b. What options are there for authorization? Can HPD adopt a two-factor authentication system or physical token/smart card?
   c. What options are there for audit logging?

    d.  How is data shared in TIBURON?  Is it a flat file or database?  Encrypted or not?

    e.  Can TIBURON prevent modification of certain records and alert if modified?

    f.  How are transaction numbers assigned?

5.  Has the HCDAO ensured that systems used by other law enforcement agencies in Harris County will not have the capability to allow changes by third parties?  What operating systems do the other law enforcement agencies operate and what security measures do they have in place?  What policies do they follow to ensure the security of their probable cause summaries?

*****

If I as independent monitor should oversee such an investigation, it would require an adequate budget to hire computer security consultants, as well as guidelines from this court regarding the duration and scope of my authority, particularly with regard to the Houston Police Department, as well as the objectives of the investigation.  I am prepared to assist in this investigation if you find it to be appropriate.

Sincerely,

Sandra Guerra Thompson
Newell H. Blakely Chair
Criminal Justice Institute Director

cc:

Chival Washington
Attorney for Defendant
Via email chival.washington@huschblackwell.com

Ben Stephens
Attorney for Defendant
Via email ben.stephens@huschblackwell.com

Katherine D. David
Attorney for Defendant
Via email kate.david@huschblackwell.com

Melissa Spinks
Attorney for Defendant
Via email Melissa.spinks@cao.hctx.net

Mike Stafford
Attorney for Defendant
Via email mike.stafford@huschblackwell.com

Alec Karakatsanis
Attorney for Plaintiffs
Via email alec@civilrightscorps.org

Charlie Gerstein
Attorney for Plaintiffs
Via email charlie@civilrightscorps.org

Scott Durfee
Harris County District Attorney's Office
Via email DURFEE_SCOTT@dao.hctx.net

# Appendix A



**Law Center**

**Sandra Guerra Thompson**
*Alumnae College Professor of Law &
Criminal Justice Institute Director*

February 1, 2018

Charles Gerstein
Attorney for Plaintiffs
Via email Charlie@civilrightscorps.org

Katherine D. David
Attorney for Defendant
Via email kdavid@gardere.com

Melissa Spinks
Attorney for Defendant
Via email Melissa.spinks@cao.hctx.net

Mike Stafford
Attorney for Defendant
Via email mstafford@gardere.com

Phillip J. Morgan
Attorney for Defendant
Via email pmorgan@gardere.com

Scott Durfee
Harris County District Attorney's Office
Via email DURFEE_SCOTT@dao.hctx.net

Re: LUCAS LOMAS and CARLOS EALGIN v. HARRIS COUNTY, TEXAS

Dear Ladies and Gentlemen:

Thank you for the confidence you have shown in my by asking me to monitor the settlement
agreement in this case. I hope to assist you as best I can.

Today, Assistant District Attorneys Jim Leitner and Scott Durfee gave me, along with Mr.
Morgan, a tour of the District Attorney's Intake offices. We were introduced to the District
Attorney Intake Management System (DIMS). I observed several reports prepared for purposes
of presenting probable cause statements for warrantless arrests, and I also observed a
demonstration of the process of creating such reports. I found that the electronic case
management system automatically generates a statement whereby an officer must affirmatively
type a "y," signifying the officer's acknowledgment that the he or she declares "under penalty of

perjury that the foregoing happened in Harris County, Texas and is true and correct based on information and belief."

Based on my observations, I find the Defendant, Harris County, to be in compliance with the Court's Final Consent Judgment at this time. By agreement of the parties, I will monitor the process on a bi-annual basis and send additional reports similar to this for the next three years. If you have any questions or concerns, please feel free to contact me.

Sincerely,

Sandra Guerra Thompson
Alumnae College Professor of Law
and Criminal Justice Institute Director



**Law Center**

Sandra Guerra Thompson
*Newell H. Blakely Chair*
*and Criminal Justice Institute Director*

August 1, 2018

Charles Gerstein
Attorney for Plaintiffs
Via email Charlie@civilrightscorps.org

Katherine D. David
Attorney for Defendant
Via email kdavid@gardere.com

Melissa Spinks
Attorney for Defendant
Via email Melissa.spinks@cao.hctx.net

Mike Stafford
Attorney for Defendant
Via email mstafford@gardere.com

Phillip J. Morgan
Attorney for Defendant
Via email pmorgan@gardere.com

Scott Durfee
Harris County District Attorney's Office
Via email DURFEE_SCOTT@dao.hctx.net

Re: LUCAS LOMAS and CARLOS EALGIN v. HARRIS COUNTY, TEXAS

Dear Ladies and Gentlemen:

Today, Assistant District Attorneys Jim Leitner and Scott Durfee escorted me to the District Attorney's Intake offices. I observed numerous reports prepared for purposes of presenting probable cause statements for warrantless arrests. With the exception of one report, the electronically produced probable cause statements all contained the requisite sworn statements. The one instance in which the report did not contain the oath was anomalous. It is a case in which the individual is not yet in custody, and I was assured that the officer would be required to make a sworn statement at the time when an arrest warrant would be obtained.

Thus, based on my observations, I find the Defendant, Harris County, to be in compliance with the Court's Final Consent Judgment at this time. By agreement of the parties, I will monitor the

process on a bi-annual basis and send additional reports similar to this for the next three years.  If you have any questions or concerns, please feel free to contact me.

Sincerely,

Sandra Guerra Thompson
Newell H. Blakely Chair
and Criminal Justice Institute Director



Law Center

**Sandra Guerra Thompson**
*Alumnae College Professor of Law &
Criminal Justice Institute Director*

February 15, 2019

Charles Gerstein
Attorney for Plaintiffs
Via email Charlie@civilrightscorps.org

Katherine D. David
Attorney for Defendant
Via email kdavid@gardere.com

Melissa Spinks
Attorney for Defendant
Via email Melissa.spinks@cao.hctx.net

Mike Stafford
Attorney for Defendant
Via email mstafford@gardere.com

Phillip J. Morgan
Attorney for Defendant
Via email pmorgan@gardere.com

Scott Durfee
Harris County District Attorney's Office
Via email DURFEE_SCOTT@dao.hctx.net

Re: LUCAS LOMAS and CARLOS EALGIN v. HARRIS COUNTY, TEXAS

Dear Ladies and Gentlemen:

On February 1, 2019, I visited the District Attorney's Intake offices with Assistant District Attorneys Jim Leitner and Scott Durfee of the District Attorney's Intake offices. I observed a random selection of the reports prepared for purposes of presenting probable cause statements for warrantless arrests as part of the District Attorney Intake Management System (DIMS I found that the electronic case management system automatically generates a statement whereby an officer must affirmatively type a "y," signifying the officer's acknowledgment that the he or she declares "under penalty of perjury that the foregoing happened in Harris County, Texas and is true and correct based on information and belief."

Based on my observations, I find the Defendant, Harris County, to be in compliance with the

Court's Final Consent Judgment at this time.  By agreement of the parties, I will monitor the process on a bi-annual basis and send additional reports similar to this for the next two years.  If you have any questions or concerns, please feel free to contact me.

Sincerely,

Sandra Guerra Thompson
Alumnae College Professor of Law
and Criminal Justice Institute Director

UNIVERSITY of
**HOUSTON**

**Law Center**

**Sandra Guerra Thompson**
*Newell H. Blakely Chair*
*and Criminal Justice Institute Director*

August 13, 2019

Chival Washington
Attorney for Defendant
Via email chival.washington@huschblackwell.com

Ben Stephens
Attorney for Defendant
Via email ben.stephens@huschblackwell.com

Katherine D. David
Attorney for Defendant
Via email kate.david@huschblackwell.com

Melissa Spinks
Attorney for Defendant
Via email Melissa.spinks@cao.hctx.net

Mike Stafford
Attorney for Defendant
Via email mike.stafford@huschblackwell.com

Alec Karakatsanis
Attorney for Plaintiffs
Via email alec@civilrightscorps.org

Scott Durfee
Harris County District Attorney's Office
Via email DURFEE_SCOTT@dao.hctx.net

Re: LUCAS LOMAS and CARLOS EALGIN v. HARRIS COUNTY, TEXAS

Dear Ladies and Gentlemen:

On August 9, 2019, Assistant District Attorneys Jim Leitner and Scott Durfee escorted me to the
District Attorney's Intake offices.  I observed numerous reports prepared for purposes of
presenting probable cause statements for warrantless arrests.  The electronically produced
probable cause statements all contained the requisite sworn statements.

Thus, based on my observations, I find the Defendant, Harris County, to be in compliance with the Court's Final Consent Judgment at this time.  By agreement of the parties, I will monitor the process on a bi-annual basis and send additional reports similar to this until August of 2020.  If you have any questions or concerns, please feel free to contact me.

Sincerely,

Sandra Guerra Thompson
Newell H. Blakely Chair
and Criminal Justice Institute Director

UNIVERSITY of
# HOUSTON

**Law Center**

**Sandra Guerra Thompson**

*Newell H. Blakely Chair*

*and Criminal Justice Institute Director*

February 13, 2020

Chival Washington
Attorney for Defendant
Via email chival.washington@huschblackwell.com

Ben Stephens
Attorney for Defendant
Via email ben.stephens@huschblackwell.com

Katherine D. David
Attorney for Defendant
Via email kate.david@huschblackwell.com

Melissa Spinks
Attorney for Defendant
Via email Melissa.spinks@cao.hctx.net

Mike Stafford
Attorney for Defendant
Via email mike.stafford@huschblackwell.com

Alec Karakatsanis
Attorney for Plaintiffs
Via email alec@civilrightscorps.org

Charlie Gerstein
Attorney for Plaintiffs
Via email charlie@civilrightscorps.org

Scott Durfee
Harris County District Attorney's Office
Via email DURFEE_SCOTT@dao.hctx.net

Re: LUCAS LOMAS and CARLOS EALGIN v. HARRIS COUNTY, TEXAS

Dear Ladies and Gentlemen:

On February 11, 2020, Charlie Gerstein raised a concern with me regarding the oath language in the Harris County DIMS system and whether it contained a signature in the form of "/s/" followed by the officer's name or any equivalent indication that the officer's name associated with the language is evidence of a sworn oath. I was also asked to investigate whether the training materials that are used to train police officers regarding use of the DIMS system remain available to police officers in Harris County and whether they make clear that a false statement by a police officer can subject an officer to perjury liability.

On February 12th, I visited the Intake Office at the Harris County District Attorney's Office and met with Scott Durfee and Jim Leitner. Below are my findings:

1. The statements in the DIMS summary of facts include this language: "I, (name of officer), DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING HAPPENED IN HARRIS COUNTY, TEXAS AND IS TRUE AND CORRECT ON INFORMATION AND BELIEF: Y." (Three electronic copies of DIMS statements are attached. I have redacted the factual statements and identifying information.)

2. Officers must type "Y" to indicate that they agree with the oath regarding the foregoing summary of facts.

3. The oath statement is not followed by a signature in the form of "/s/" followed by the officer's name.

4. I asked them whether they had heard of any Harris County officials who believed the DIMS probable cause factual summaries were not sworn statements that could subject an officer to penalty of perjury for false statement. They had not heard of any Harris County official expressing that opinion.

5. Regarding the authentication of the oath statement, they stated that it is their belief that the factual summaries in the electronic DIMS system are sworn statements that make an officer subject to perjury liability for two reasons. First, under Texas law, peace officers have equivalent authority to administer an oath as a notary public. Texas Gov. Code 602.002 (5), (17). Second, the DIMS system requires each officer to enter an individualized password in order to file a report. This password system authenticates that the officer has personally filed the report.

6. While I was meeting with ADAs Leitner and Durfee, they held a phone conference with their IT person to discuss adding the "/s/" followed by the officer's name to follow the oath statement. They told him to make this a top priority and to find a way to add the electronic signature to the DIMS form. Mr. Durfee assured me that they would add the electronic signature format as soon as possible.

7. Regarding the training program, Mr. Leitner informs me that he personally has conducted several training sessions regarding the new DIMS system and the Lomas settlement. He stated that the focus of this training has been to impress on the officers that their factual summaries are now required to be sworn statements and that they are subject to prosecution for perjury for knowingly making false statements. (Electronic copies of the first version and most recent training materials are attached.)

8. I have reviewed the training materials and find that they adequately inform officers of the fact that their sworn statements in DIMS reports will subject them to perjury liability for knowingly false statements.

On February 19th, per the suggestion of Mr. Durfee, I spoke with Charlie Gerstein regarding the above findings and to investigate whether I fully understood the nature of the concerns being raised by the Plaintiffs. Mr. Gerstein did not state any specific allegations of misconduct by any Harris County official or further elaborate on the basis of the concerns.

Based on my investigation into this matter, I reaffirm my finding that the Defendant Harris County remains in compliance with the Court's Final Consent Judgment. As always, please feel free to contact me with any further questions or concerns.

Sincerely,

Sandra Guerra Thompson
Newell H. Blakely Chair
Criminal Justice Institute Director

UNIVERSITY of
**HOUSTON**

**Law Center**

**Sandra Guerra Thompson**
*Newell H. Blakely Chair*
*and Criminal Justice Institute Director*

August 6, 2020

Chival Washington
Attorney for Defendant
Via email chival.washington@huschblackwell.com

Ben Stephens
Attorney for Defendant
Via email ben.stephens@huschblackwell.com

Katherine D. David
Attorney for Defendant
Via email kate.david@huschblackwell.com

Melissa Spinks
Attorney for Defendant
Via email Melissa.spinks@cao.hctx.net

Mike Stafford
Attorney for Defendant
Via email mike.stafford@huschblackwell.com

Charlie Gerstein
Attorney for Plaintiffs
Via email charlie@civilrightscorps.org

Scott Durfee
Harris County District Attorney's Office
Via email DURFEE_SCOTT@dao.hctx.net

Re: LUCAS LOMAS and CARLOS EALGIN v. HARRIS COUNTY, TEXAS

Dear Ladies and Gentlemen:

On August 4, 2020, I met via Zoom with Jim Leitner and Scott Durfee, for the Defendant, and Charlie Gerstein, for the Plaintiff, regarding my inspection of the Harris County District Attorney's Office "District Attorney Intake Management System" or "DIMS." By agreement of the Parties, I inspected a representative sample of DIMS statements that were sent to me by ADA Leitner's assistant via email. (As I am not in Houston, I am unable to conduct the inspection in person.) Based on this inspection and the representations of Mr. Leitner that the DIMS system has continued to function unchanged from my last in-person inspection, I conclude that the electronic case management system automatically generates a statement whereby an officer must affirmatively type a "y," signifying the officer's acknowledgment that the he or she declares "under penalty of perjury that the foregoing happened in Harris County, Texas and is true and correct based on information and belief." I would also note that the signatures now also include the "/s/" which has been added to the form since my last inspection, as arranged by Mr. Durfee.

In addition, I raised with the parties several concerns regarding the availability of the DIMS statements to defense counsel and the trial courts. These concerns had been brought to my attention in conversations with representatives of the Harris County Public Defender's Office who raised three points:

1. That the DIMS statements were not made part of the courts' records.

2. That the trial courts did not have access to the DIMS statements, and that prosecutors denied trial courts' requests for physical copies of the DIMS statements.

3. That the DIMS were not the basis for the Criminal Complaints which were instead based on an affidavit by the District Attorney's administrative assistant who recited the information from the DIMS.

4. That it was impossible to hold an officer accountable for a false statement in a DIMS because the Criminal Complaint did not rely on it and the courts did not have access to them.

In the meeting with the parties, Mssrs. Durfee and Leitner, as well as ADA Jennifer Keith who was brought into the meeting to answer a few questions, reported the following:

1.      That the DIMS statements were not part of the trial courts' records because (1) the magistrates do have access to the DIMS at the 15.17 hearings and have already made probable cause determinations; and (2) if probable cause is again raised before the trial court, the prosecutor would read the facts from the DIMS into the record.

2.      They were not aware whether any prosecutors had denied providing printed copies of DIMS to any trial judge(s). They noted that there is a pending lawsuit on whether the rules of procedure require them to provide these documents to the trial courts.

3.     That Criminal Complaints were not based on the DIMS because it would be impractical to have every arresting officer sign the complaints.  They noted that it was not improper to base Criminal Complaints on such hearsay (or, more accurately, double-hearsay) statements.  Thus, for purposes of expediency, they routinely have administrative assistants swear out Criminal Complaints based on the information in the DIMS.

4.     With regard to the concern about holding an officer accountable for a false statement in a DIMS summary, Mr. Durfee stated that the DIMS is discoverable by the defense, so they should be able to get a copy of it.

Following my meeting with the Parties, I spoke with Sarah Wood of the Harris County Public Defender's Office on August 6, 2020, to determine whether the office's defense attorneys had encountered any problems obtaining copies of the DIMS through the discovery process.  She informed me that the attorneys in the Public Defender's Office receive copies of the factual statements in the DIMS for purposes of the bail hearings.  She raised the concern that the "vast majority" of the factual statements they receive do not include the signature swearing the oath.

I explained to Ms. Wood that, based on my inspections of the DIMS systems, all of the DIMS statements include a signature swearing an oath.  I explained my understanding of the system which includes individualized password for officers to access the system, and a requirement that they swear the oath by writing "y" on the appropriate place in order to submit them.  I also let her know that the signatures now also include the "/s/" which has been added to the form after my last inspection.  She agreed that this satisfied the legal requirement that the allegations be sworn.

Ms. Wood agreed that any defense attorney should be able to get a copy of the DIMS through the discovery process, as Mr. Durfee stated.  Nonetheless, she maintained that the DIMS should be filed with the trial courts.  She opined that the DIMS should be incorporated into the Criminal Complaint, in the same way as an arrest warrant affidavit.  In response to the assertion that prosecutors read the DIMS statement into the record, she said some prosecutors did not read the entire DIMS factual statement, instead apparently selectively deleting certain statements.  Thus, she reiterated the concern that prosecutors were refusing the trial courts demands to receive copies of the DIMS.

Based on my investigation into this matter, I find that the Defendant Harris County remains in compliance with the Court's Final Consent Judgment.  As always, please feel free to contact me with any further questions or concerns.

Sincerely,

Sandra Guerra Thompson
Newell H. Blakely Chair
Criminal Justice Institute Director

Appendix B



DAVID MITCHAM
FIRST ASSISTANT

VIVIAN KING
CHIEF OF STAFF

500 JEFFERSON, SUITE 600
HOUSTON, TEXAS 77002

**KIM OGG**
**DISTRICT ATTORNEY**
**HARRIS COUNTY, TEXAS**

October 25, 2020

Professor Sandra Guerra Thompson
University of Houston Law Center
4604 Calhoun Road
Houston, Texas 77204-6060
*By email: sguerrat@central.uh.edu*

> Re:    *Lomas, et al. v. Harris County, Texas*, Civil Action No. 16-cv-3745
>        (United States District Court, Southern District of Texas, Houston
>        Division).

Dear Professor Thompson:

Thank you for visiting with me, Jim Leitner, and David Mitcham last week regarding what we learned about how Houston Police Department supervisors were amending sworn probable cause summaries in the District Attorney Intake Management System ("DIMS") to correct what they believed were non-substantive errors in the sworn summaries.

In this letter, I will detail what we have learned to date, the measures we have taken to remedy any Houston Police Department procedures that appear to be noncompliant with the agreed consent judgment signed by Judge Rosenthal on November 1, 2017, and what we will do going forward.

As you know, the *Lomas* settlement requires the District Attorney "to ensure that all DIMS summaries that are used to present facts to Harris County judicial officers for probable cause determinations, whether those summaries are in printed or electronic form, will be accompanied by the oath or affirmation" that attests, "I declare under penalty of perjury that the foregoing is true and correct based on information and belief." *See* Doc. 41-1 at 4.

Professor Sandra Guerra Thompson
October 25, 2020
Page 2.

You were appointed to serve as the Court's monitor and, in the course of your monitoring, you have affirmed that the District Attorney implemented procedures in DIMS submissions that are compliant with this agreed consent judgment.

On October 13, 2020, this office learned for the first time that supervisors at the Houston Police Department were routinely reviewing the probable cause summaries submitted by their officers in DIMS and making changes to the sworn summaries without documenting the fact of the change or swearing to the amended probable cause summary.

These circumstances were brought to the attention of Intake Bureau Chief Jim Leitner, who then contacted me on October 13. Over the next two days, we investigated the matter and determined that these amendments were routinely made by Houston Police Department supervisors to correct what they perceived to be non-substantive omissions or errors in the sworn DIMS summaries. We instructed the Houston Police Department command staff to cease this practice and they immediately agreed to do so. In a video conference on October 15, we notified you of the substance of the foregoing and agreed to send you a detailed letter by October 23.

As noted above, we have instructed the Houston Police Department to stop the foregoing practices and they have agreed to do so.

To address this matter going forward, the District Attorney's Office will do the following:

**Disclosure.** A general disclosure of these circumstances, including a copy of this letter, will be sent to the Harris County Criminal Lawyers Association and the Harris County Public Defender's Office tomorrow morning.

Conviction Integrity Division Chief Gerald Doyle will also work with our Information Technology Director Gary Zallar to determine whether DIMS has the capability to specifically identify criminal cases in which a DIMS probable cause summary was amended in the manner described above.

Professor Sandra Guerra Thompson
October 25, 2020
Page 3.

If we determine that DIMS can identify such cases, an individualized notice will be sent to any identified defendant with a pending case related to the amended DIMS summary and any identified defendant whose case resulted in conviction, deferred adjudication, or pretrial diversion. Defendants whose cases were declined at Intake and or whose filed cases resulted in dismissal, no-bills, or acquittals will not be notified because of the absence of prejudice.

**Review of Practices of Other Police Agencies.** We will determine whether any other Harris County law enforcement agency has the capability for third parties to amend an officer's sworn DIMS summary. We believe this capability was unique to the Houston Police Department's TIBERON operating system, and that no other police agency operating in Harris County has the present capacity to make changes in the same manner as described above, but we intend to verify that no other police agencies are engaging in similar practices.

**Policy Changes.** The Houston Police Department (and any other agency that engages in similar practices) will adopt a standard procedure for substantive and non-substantive amendments to sworn DIMS probable cause summaries and train their officers on this procedure.

<u>Conclusion</u>

I have been told that the Houston Police Department's intentions were benign. They have represented that they were making what they believed to be non-substantive changes to the sworn DIMS summaries in the interests of quality control to ensure that the probable cause summaries were accurate, complete, and typographically correct. They have also represented that, when substantive errors or omissions were found, the Houston Police Department supervisors notified the original officer submitting the DIMS probable cause summary and instructed that officer to make the substantive changes in a transparent manner with a new verification.

Thank you for your service as monitor in this matter. We welcome any suggestions you may have to ensure further compliance with the agreed consent judgment.

Professor Sandra Guerra Thompson
October 25, 2020
Page 4.

Respectfully submitted,

*Scott Durfee*

SCOTT A. DURFEE
General Counsel
713-274-5816

Appendix C

**Thompson, Sandra G**

| | |
|---|---|
| **From:** | Durfee, Scott <DURFEE_SCOTT@dao.hctx.net> |
| **Sent:** | Tuesday, November 24, 2020 1:59 PM |
| **To:** | Thompson, Sandra G |
| **Cc:** | charlie@civilrightscorps.org; Ogg, Kim; Mitcham, David; Musick, JoAnne; Zallar, Gary; King, Vivian; Leitner, Jim |
| **Subject:** | Response |

Sandy,

Thanks for checking in.  I apologize for the delay in responding.

Re: **HPD information**.  Here is what we received last week regarding the HPD policy change; it was an email sent from Chief Skillern to the HPD command staff on October 13 at 4:30 p.m.:

> *Effective immediately, upon filing charges officers are to contact the JPC sergeant at 346-286-1200 to have them reviewed.  Officers are reminded of the timely nature of filling charges post arrest, and that this should be done within two hours following transferring custody of the prisoner to the JPC personnel.  Charges will not be sent until the filing officer contacts the JPC Sergeant and they receive an approval.  If changes need to be made to the charges, the charging officer will be responsible for making the changes.  Officers should document in the offense report who they spoke with at the JPC.*
>
> *Assistant Chief M.L. Skillern*
> *Patrol Support Command*
> *Houston Police Department*
> *713.308.1878*

And here is what we received on Monday from Chief Skillern regarding access to their records:

> *From: Skillern, Michael [mailto:Michael.Skillern@HoustonPolice.Org]*
> *Sent: Monday, November 23, 2020 3:50 PM*
> *To: Musick, JoAnne <MUSICK_JOANNE@dao.hctx.net>*
> *Subject: Status of DIMS Project*
>
> *JoAnne, our technology team met and has come up with answers to some of our questions.  First, we are still not sure that from our side we will be able to identify any sets of charges that have been modified, this is proving more difficult than we initially believed, though we have not yet determined it's impossible.  Second, we are working on a process where going forward, if any changes are made, to be able to retain saved copies of the original document and any subsequent documents.  This is contingent upon our IT people working with county IT people, which has been difficult lately.  There is a November 24th meeting set up for these teams to discuss further.  Third, we intend to limit access to any future transaction numbers to the originating officer and supervisors assigned to the JPC.  This is doable, but a timeline is uncertain.  Please call me if this is unclear.*
>
> *Assistant Chief M.L. Skillern*
> *Patrol Support Command*
> *Houston Police Department*
> *713.308.1878*

Re: **access to our DIMS records**.  Per your request, we are moving forward with tentative plans on how to gather and produce the 2019 and 2020 DIMS probable cause summaries.  It is my understanding, however, that we will not need to produce anything until Charlie has decided what he needs and makes the request to you and our office.  And to ensure that the process is transparent and to permit us to properly evaluate his request, we would like Charlie to articulate in detail exactly what he needs, why he needs it, and what he intends to do with the information, including how it will be stored securely thereafter.

**One more thing**.  Since our last meeting, we have learned that DIMS has the technical ability to allow a third party to log into DIMS on the third party's account and change a DIMS summary without the affiant's name being changed.  To be clear, any such change would be documented and logged with the third party's user information.  Gary Zallar is meeting with Universal Services today to find out what progress they have made in changing this programming going forward.

We will stand by for the next steps.  Have a great holiday!

Scott

---

**From:** Guerra Thompson, Sandra (JAD) [mailto:Sandra.GuerraThompson@jad.hctx.net]
**Sent:** Monday, November 23, 2020 10:19 AM
**To:** Durfee, Scott <DURFEE_SCOTT@dao.hctx.net>
**Cc:** Charles Gerstein <charlie@civilrightscorps.org>
**Subject:** Lomas response due today

Hi Scott,

This is a friendly reminder that I am awaiting responses from HPD which we agreed would be transmitted by you today.  The answers sought from HPD regard the three issues we discussed at our last meeting:
1. Does HPD's Tiburon software allow them to determine which DIMS summaries had been altered and how they were altered?
2. Is there a means for securing the system to make it impossible for a supervisor to make alterations to an officer's sworn statements?
3. A copy of the written policy by HPD prohibiting alterations to the DIMS summaries.

In the meantime, on 11/18, I had asked you via email to have the HCDAO IT team begin preparing to provide a hard drive with the DIMS summaries for 2019 and 2020.  Assuming that you advise me today that HPD cannot determine which summaries have been altered, I would like an update on my request of 11/18 for you to move forward with plans to produce those summaries.

Thanks,
Sandy

*Sandra Guerra Thompson*
Deputy Monitor
ODonnell v. Harris County Consent Decree
| PHONE 713.851.4393 | Sandra.GuerraThompson@jad.hctx.net

https://sites.law.duke.edu/odonnellmonitor/

2

Appendix D



**DAVID MITCHAM**
**FIRST ASSISTANT**

**VIVIAN KING**
**CHIEF OF STAFF**

**500 JEFFERSON, SUITE 600**
**HOUSTON, TEXAS 77002**

**KIM OGG**
**DISTRICT ATTORNEY**
**HARRIS COUNTY, TEXAS**

December 4, 2020

Professor Sandra Guerra Thompson
University of Houston Law Center
4604 Calhoun Road
Houston, Texas 77204-6060
*By email: sguerrat@central.uh.edu*

Mr. Charles Gerstein
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
*By email: charlie@civilrightscorps.org*

   Re:  *Lomas, et al. v. Harris County, Texas*, Civil Action No. 16-cv-3745
      (United States District Court, Southern District of Texas, Houston
      Division).

Dear Professor Thompson and Mr. Gerstein:

   I am in receipt of your emails regarding the sworn probable cause statements
submitted in the DIMS system.  This letter is intended to raise and resolve any
difference of opinion regarding the issues at hand.  The District Attorney's Office will
extend all cooperation and professional courtesies pursuant to the agreed judgment and
our commitment to the sound operation of the charging process in Harris County.

   In addressing each of your requests and concerns, please review the following
observations and concerns:

   The *Lomas* agreed consent judgment and accompanying settlement agreement
was fairly narrow in scope, calling for the District Attorney to modify the DIMS system
to incorporate an oath component to the officer's probable cause summary.  We did

Professor Sandra Guerra-Thompson
Mr. Charles Gerstein
December 4, 2020
Page 2.

that, as Professor Thompson observed and confirmed over the past three years of monitoring.

The new issue is something completely different. While *Lomas* was about the *absence* of a mechanism for a sworn probable cause statement, the new issue is about whether third parties have or may have altered the summary without notice to and adoption by the attesting officer. This issue, while troubling, does not call into question the District Attorney's compliance with her commitments under the agreed consent judgment.

Accordingly, as we move forward, we need clarity as to what you and the plaintiff's counsel intend to do with the requested information. We believe that the provision in the settlement agreement calling for preservation of the DIMS probable cause summaries and production to the monitor upon request was not to facilitate a forensic examination of previous drafts of the summaries and their metadata, but simply to allow you to authenticate that the District Attorney had incorporated an oath component to each probable cause summary presented to hearing officers. The limited scope of the preservation and production responsibility is apparent from the specific language in the final consent judgment:

> Harris County, as custodian of records, will retain accurate copies (in either paper or electronic form) of all DIMS summaries *that are presented to hearing officers for probable cause determinations* and copies of all video hearings for at least one year after the probable cause determinations, and Harris County will make such records available to the monitor upon request.

Put another way, what would be the end result of the plaintiffs' counsel's proposed investigation? Would it to be to investigate whether the District Attorney violated a term of the agreed consent judgment? If so, which term of the agreed consent judgment is at issue?

If the plaintiffs' counsel intends to use the production to identify DIMS summaries that were altered without the original officer's knowledge and consent, then the plaintiffs are using this proceeding to investigate a completely different theory of

Professor Sandra Guerra-Thompson
Mr. Charles Gerstein
December 4, 2020
Page 3.

liability regarding Harris County's intake processes that is only tangentially related to the original *Lomas* litigation and the information you intend to provide to the plaintiffs' counsel will be used for purposes inconsistent with the agreed consent judgment.

The District Attorney is committed to correcting the issues brought to her attention and will be transparent with you and the plaintiffs' counsel about the remedial measures being implemented to identify and prevent any future alteration of a summary without the attesting officer's affirmation. She believes, however, that the only parties with standing to investigate the veracity or authenticity of any particular probable cause summary and seek appropriate relief in the criminal courts are the criminal defendants themselves on a case-by-case basis.

Now, answering your questions:

## **Professor Thompson's Questions**

- *When can we expect a final answer from HPD regarding their ability to determine which summaries were changed?*

  We do not know. Although we appropriately assumed the responsibility of bringing HPD's quality control practices to your attention, we did not intend to assume the responsibility of managing HPD's responses to your follow-up inquiries. This goes beyond the scope of our responsibility under the consent judgment.

- *Am I understanding Chief Skillern correctly when he says that "from our side" we may not be able to determine which summaries were changed?*

  For the reasons expressed above, we do not know.

- *Is this because the information is in the JPC system which is a county system?*

  DIMS is not part of JPC or the Harris County Sheriff's Office's system. It is a District Attorney's Office program and the DIMS data belongs to the District Attorney's Office. The DIMS program was written by Universal Services. The

Professor Sandra Guerra-Thompson
Mr. Charles Gerstein
December 4, 2020
Page 4.

only system that we are aware of at JPC is the Sheriff's Offender Management System (OMS) which is used for jail booking and is independent of DIMS.

- *Should we be working with county officials to make this determination?*

  To the extent that anyone has an obligation to provide information related to any altered probable cause summaries, this office should be your point of contact because the data belongs to us.

- *When can we expect an answer whether the system can be secured so that summaries cannot be changed by supervisors?*

  With respect to HPD, we do not know. As you know, we have informed HPD of the problem and they have changed their policies regarding alterations in Tiburon, but system security questions should be directed to them. With respect to non-HPD filings, we are actively working with Universal Services to identify and close any programming vulnerabilities.

- *With regard to the new issue regarding a third-party's ability to access the summaries, I would like to know more about this situation, but I think it best to discuss in a meeting rather than by email.*

  We agree. We will be available for a meeting at your convenience next week.

## Mr. Gerstein's Observations

- *From our perspective, given the prospect (of which we've just learned) that DIMS summaries may be altered, we would like a record of them before any future alterations are possible and would like to review them to get a sense of how, specifically, manipulations may be possible. After our most recent call, I don't think our initial hope – that we could compare two sets of records to determine which have been altered – will be feasible, but if that turns out to be wrong, we will want to do that as well.*

Professor Sandra Guerra-Thompson
Mr. Charles Gerstein
December 4, 2020
Page 5.

As noted above, we need clarity as to whether the inquiry Mr. Gerstein proposes is within the scope of the monitor's oversight in the *Lomas* agreement. In the interim, Information Systems Technology Director Gary Zallar and Cyber Crimes Bureau Chief JoAnne Musick are available to debrief Mr. Gerstein (or his designated IT expert) on how the status quo will be preserved in the DIMS system pending resolution of the issues discussed above.

- *At the same time, Sandy is entitled to the DIMS summaries at her request under the consent judgment, and she has already requested them, and because each summary is read out loud at a 15.17 hearing, we view the summaries as essentially public in any event.*

As noted above, while Professor Thompson is entitled to have "DIMS summaries that are presented to hearing officers for probable cause determinations" made available to her, this authority does not appear to extend to drafts and metadata.

Also, upon information and belief, not all DIMS probable cause summaries are read out loud or otherwise presented at a 15.17 hearing.

- *Regarding how we'd store the data, we would be willing to discuss a specific protective order, but we can generally assure you that we'll be able to store any data on the server that we use for our confidential client communications, which is sufficient in our view reasonably to prevent unauthorized access.*

The District Attorney's concerns are not only related to access security, but also how the provided information would be used by the plaintiffs' counsel. If disclosure is required, a specific protective order will have to address the manner of use as well, as Professor Thompson acknowledged in her email of November 18.

Professor Sandra Guerra-Thompson
Mr. Charles Gerstein
December 4, 2020
Page 6.

      Thank you in advance for your willingness to take all parties' concerns to heart as you assist Harris County in working toward a sound resolution to the many details inherent in a system dependent on independent agencies and individuals.

                Sincerely,

                *Scott A. Durfee*

                SCOTT A. DURFEE
                General Counsel
                Office of the District Attorney